1-10-1233, Demand Printing Company v. Daniel Wessel May it please the Court, Mr. Wishnick. Good morning. This is still morning. My name is Henry Austin. I represent Demon Printing. On our about February 22, 2003, Mr. Wessel sustained an injury on the job. He was lifting about 40 pounds of paper into a printing press. He says he threw the paper, heard a pop in his back, and felt pain. Over the succeeding days and months, he developed more and more back pain, radicular He began work for the employer in 1974? Correct. He had been working for them for quite a while. He had been an apprentice pressman for all of that time, I believe he testified, doing this same job. Not that it's important, but did he ever file a workers' comp claim before? No. Not to my understanding. And he also was diagnosed, when he finally went in, he was diagnosed with a grade 1 to 2 spondylolisthesis. So clearly the man had a condition in his back. And I don't even have a problem saying that over time it was aggravated as he worked. But the problem is that when you get to 2003, he suffers a discreet, distinct injury on the job, and everything is there to trigger the statute of limitations running. We wouldn't be here today if he had gone in and filed his claim timely. We wouldn't be talking about repetitive trauma or manifestation dates if he hadn't waited too long to file his claim. It's interesting to me that Arbitrator Peterson in his decision, and I don't think I realized this actually until I was sitting here this morning, Arbitrator Peterson finds against me, but he says he sustained a discreet injury in 2003, but he claims that I stipulated to a different date, the date of manifestation that was claimed by the petitioner. But when I look back at his decision, he never mentions Durand or Oscar Meyer, he never talks about manifestation dates, he never says anything about repetitive trauma. And his decision actually wasn't a decision to say, I agree with the petitioner, this is a repetitive trauma case. His decision was simply to say, I've got to find a way here, and the way I've found is that I think you stipulated to the later date, so you're stuck with it. It really doesn't make too much difference what the arbitrator did at this point, does it? Well, it doesn't. But I guess what it goes to is talking about whether it's clearly contrary to the law and it goes to whether it's manifest. It was manifest to Peterson that it wasn't repetitive. It was manifest to the claimant's treaters. It was manifest to his expert who said he obviously sustained a discreet injury in 2003. I don't see anyone saying, and if this is the case, it may not be a manifest weight case, I don't see anybody here saying that he didn't sustain this discreet injury in 2003. Well, I mean, it's a factual matter for the commission to decide whether or not it's repetitive trauma or discreet injury. Correct? Would you agree with that? Well, it's their decision, but they have to have some facts to base it on, certainly. They can't pull it out of thin air. Okay. And did the fact that it's aggravated or caused, is that a factor? You mean that it was an aggravation of a preexisting congenital condition or whatever? No, I don't think that's significant at all. I think the thing we're looking for is that point in time where the claimant knows what he needs to know to make a claim. And I suspect many discreet injuries begin as repetitive traumas. That is, over time, your body's wearing down, and one day, boom, something gives and you have a discreet injury. And you're not entitled to ignore the discreet injury because you've locked yourself into a mindset that says this was a repetitive trauma. The commission, I think, was a little loosey-goosey about this. I'm not quite clear whether they agreed that there was a discreet injury. What they say is that he forgot about it. Well, don't we have this injury, this pop, okay? Right. And he continues working for how long? Two years. Well, I mean, when he finally took off work, I think it was right before his surgery that he had in 2006, if you want to get down to it. Okay. But he continues working until he can no longer work, right? He gets a 12-hour shift and he just can't handle it. I don't agree with that. I mean, I think he kept working until he had the surgery. He took some time off to recuperate. He came back. He worked one day with limitations, and then he walked off the job. I mean, that's one of my other points that maybe you never get to if you handle it the other way. But, no, I don't think he was ever unable to work except for the time that he was out with his surgery. Well, isn't that a relevant factor? I mean, he says you're saying it's a discrete injury. The claimant says his back popped out. He testified the pain went away within a few minutes. He was able to work without experiencing any pain or symptoms for several months after that. He only began to experience the symptoms after he continued to perform his repetitive work duties. So how are you saying there's no evidence that the repetitive nature of it had nothing to do with this? It was one clearly specific discrete injury. Then why does he continue on performing his job like there's no problem? Well, I guess my point is what's missing at that point when he feels the pop, I mean, or when he hears the pop, he feels pain, and he had just threw a large weight of paper into a machine. I mean, I think if we any of us just out of the blue, if you were given those facts, would say the guy had an injury on the job. That's an injury on the job. And whether it's fully manifested in radicular symptoms immediately or whatever, that's not germane to the question, to my mind. Well, how are you defining the manifestation date? What, in your opinion, is the manifestation date under those circumstances? Well, Durand, I don't think we've been taught. I guess what I'm saying is I don't think we even get into the world of manifestation dates and repetitive trauma if you have a discrete injury. The Supreme Court in Durand said it's easy. If you have a discrete injury, the date of injury is the date that the cause accrues and the statute starts running. But if you have a discrete injury that goes away within several days and you're capable of working for a long period of time, and during that work you aggravate whatever condition was created, what have you got, repetitive trauma or discrete injury? He couldn't have filed an application for adjustment of claim if within two days of the event he was fine. What would he recover? He couldn't recover anything. I have a case where a guy did just that, that he was hurt on the job. He walks in in an abundance of caution and says, I want you to know I just hurt myself. I'm going to keep working. Maybe it will just go away. But he fulfilled the requirements of the law in terms of notice. And in terms of the statute, we give him three years. And this was fully manifested well within the three years, which shows the wisdom of the length of the statute and the law on discrete injury. So you're suggesting that you want to establish the precedent every time an employee feels some pain at work, they ought to file a claim. No, they've got three years to file a claim. And maybe they don't need to file a claim. But the point is, you can't wait three and a half years after a discrete injury to file a claim. The question is, what are you defining as a discrete injury? You're putting the employer in sort of an untenable position. You're going to say, well, either you file it or you're going to be accused later of running the statute as run out. As my colleague suggests, if somebody feels a pain that goes away quickly and then it manifests itself sometime later, you're going to say in hindsight, well, you should have, you know, considered the date you felt this first pain the discrete injury. Well, I think it would be the rare case where the employee went three years with no manifestation of the injury. I guess I would start to question whether he actually had sustained any injury at all in the beginning. But those aren't the facts here. I mean, the facts here are he feels pain, he hears a pop upon doing a heavy action at work, and it's within a period of a month or two, is my recollection of the evidence, that he's got back pain, he's got radicular pain, and he just continues to gut it out and work through it. He had everything he needed within a, well, he had everything he needed to give notice and actually file a claim when it happened. But he had plenty of time after that to do it if he hadn't slumbered on his rights. You said something interesting at the beginning. I believe you said there's really no evidence in the record to support a finding of repetitive trauma. What about Dr. Kale, his reports and his testimony? Well, Dr. Kale's words, I believe, are that in 2003, February 2003, he sustained an obvious discrete trauma. So, yes, he talks about a repetitive situation or repetitive wearing away of this congenital spondylolisthesis over time. But for our purposes, I guess what I'm saying is it doesn't matter if that's the situation. If you encounter a discrete incident where the employee is able to put two and two together and say, I just hurt my back, and I did it at work. I probably have a workers' compensation claim. That's the problem I have. There's a good reason to have an exception to the rule for cases like carpal tunnel and gradual insidious conditions that the employer just simply can't know for sure. But the Supreme Court makes that a fairly bright-line test. It's an exception, and it's not allowed to swallow the rule, which is if you have a discrete injury and you realize you hurt yourself on the job, you've triggered the statute and you've got a very generous three years to do something about it. It's a very appealing argument in the abstract. The problem with it is that the commission didn't find that. They have to make the finding. The issue really comes down to, when you stop and think about it, is, is there any evidence in this record to support the commission's decision? Well, and this is why I was saying, I think it's a case where it's clearly contrary to law. To the extent that they want to say there wasn't an injury in 2003, then I think it's against the manifest way, because you've got the doctors, you've got all the experts, you've got the arbitrator below, all basically saying, yeah, he had a clear, discrete injury in 2003. Now, as I say, I think their decision's a little money. I can't honestly, I honestly can't tell whether they're clearly saying he sustained a discrete injury in 2003. Let's say they are wrong on that. Okay. Okay. Let's say there was a discrete injury. Where is it in the law that you have to file a claim for a discrete injury on the job? It's only if their later finding connects it somehow. And does their later finding connect it to 2003? Does their current condition of ill-being of the employee, what do they connect it to? Well, if I understand what you're saying, I mean, the real question here is about the petitioner's knowledge, his ability to make that causal connection between his employment and the injury that he has experienced or is feeling. Right. And so let's say 03 happened. Okay. I mean, so what? I worked in the strip mine. I don't know how many potential claims could have been filed every day. Sure. But the ethos of the strip mine was you don't whine. Okay. You keep working. So now you've, I mean, that's probably changed today. I don't know. But the bottom line is we have a current condition of ill-being that's being filed on. Okay. And what is it that the commission has decided that current condition of ill-being is attributable to? To something that happens at the job, right? Rising out of in the course of it. I think it's a bit of a subterfuge for them to go to repetitive trauma. Because I think there is a discrete injury. But that's where they go. But they even misinterpret that. Because what they essentially say is they say, you know, it's not until he goes to Dr. Hurley and, quote, Dr. Hurley delves deeper into his history that he states that he remembers a time two years earlier when he heard a pop in his low back. That's not even repetitive trauma. I mean, that's just, I forgot. Yes, I had an injury. I can walk in and tell you about this injury. I can tell you about the pop and the pain and the throwing the paper. And all of us would say that's an injury. But what the commission comes back and says is, but he forgot. And he didn't realize until the doctor questioned him two years later. He didn't realize that he had forgotten, but there it is. That's not a repetitive trauma situation. My point is simply that once you get to the point where we believe the reasonable employee could say in his head, I just hurt myself on the job, that triggers the statute and all that flows from that. And it doesn't matter if what you've had up to that time is a gradual wearing down or a repetition, a repetitive trauma up to that point. Once something happens, whether it's going to the doctor and he tells them this was work-related, or whether it's, yeah, I just hurt myself on the job. Once that happens and in his mind he knows that he had an injury on the job, then there are certain consequences to that. There are certain things that flow from that. And it's not pretty in this case. Well, as long as the current condition of ill-being can be traced to that incident. Well, okay. But I will tell you that in the evidence, this is where my expert comes in, Dr. Spencer, who says I've examined all this and there's nothing in the evidence to indicate that he had any further injuries or new injuries on the job. Counsel, you have time on rebuttal. Yes, sir. Thank you very much. Counsel, please. Good morning. Neil Wyschnick on behalf of the appellee. Mr. Wessel. The issue, as I see it, is just really a manifest weight issue. Every fact that was mentioned here today, and the reason why I cited the commission decision at the beginning of my brief is every fact mentioned was considered by them.  And after all the facts are mentioned, after everything is considered, the commission says based upon the factual situation, we find that the manifestation date is February 17th, 2005. That's based upon what counsel mentions is the initial accident in 2003. Through the course of the history of this gentleman and the testimony of all the witnesses, not just the petitioner, but the respondent's witnesses. Counsel, in summary, can you tell us the rub here is obviously he's arguing this is a discreet injury. Can you summarize what evidence in the record supports the commission's finding of a repetitive trauma? The fact that he was a fetus since 1974. The fact that on February 22 of 03, he felt a pop in his back, but did not receive any treatment and continued to work, and the pain went away. The fact that he continues to work, and the condition continues to worsen, and get worse and worse as he goes on and works and works. And he even goes to a doctor for an unrelated condition, because the man is legally blind. And he's going in for eye surgery. And he explains to his eye doctor that he's got pain in his back. And the pain is radiating down his legs. And the doctor delves into it further and says, maybe you should see a specialist. And then sends him to the specialist, and he talks to the specialist, Dr. Hurley, and explains to the specialist what kind of work he does. And the specialist says, that's work-related. And that's when the injury is noted as a work-related injury. He continues to work until he totally breaks down and can't work any longer. Based upon all those facts, and there's numerous facts, for the 10 to 15 years that he experiences the pain, and he's employed there for over 30 years, and continues to work every day and describes his work as lifting paper and bending and twisting to put the paper into a machine all day long. And he also does work on the machines, too, and does a lot of bending and twisting. Based on all those facts and the conclusions of the doctors, even their own doctor, even counsel mentioned to you that at the very beginning of his argument, that his work could have aggravated, could have aggravated this condition. That establishes enough, in my mind, to be factually sufficient for a repetitive trauma injury. Now, those are the facts. And the commission adopted those facts and based its finding based on those facts. And in my mind, that's a manifest weight argument, pure and simple. Thank you, counsel. Thank you. You didn't sign in. What is your name? My name is Neil Wyschnick. I came a little late. Wyschnick, you're okay. Do you have any questions? No. Okay. I'm sorry. Your final plea. I guess what I want to say to you is that it seems to me the emphasis shouldn't be on whether or not the gentleman continues working every day with pain. If you are going to decide that someone who chooses not to get medical treatment and experiences pain and suffering every day as the result of a discreet injury, that every day is a new injury, that every day is a repetitive trauma, then you can say goodbye to the statute of limitations and notice requirements. Well, what did he have to prove? Well, what did he have to prove for repetitive trauma? I guess it would have to be a situation where he never had a discreet injury and didn't know that he'd been hurt on the job. That's the classic repetitive trauma case. I've got carpal tunnel. My wrist just hurt. I don't know why. I don't know what I did exactly that caused it. The doctor says, well, what do you do at work? Well, I sew or whatever. Well, guess what? That probably happened at work. That is not this case. And Mr. Wishnick's characterization of what happened when he went into the doctor isn't correct. If you look at the medical notes, it says, first thing up, patient history. Patient says two years ago he hurt his back throwing paper into a machine. You know, this isn't an exploration of the facts and a finding out that it was work-related. He tells them that up front when he walks in. So, you know, the problem is just that the rule is if you know you were hurt on the job, you've got to file within a certain period of time. And the only reason we have the repetitive trauma exception is for those cases where you never would have realized that because you never had a discreet injury. And if you go with this, you really allow the exception to swallow the rule and you make it immaterial that there's a statute of limitations. Anyone can come in like Mr. Wishnick and claim it was repetitive because he hurt every day thereafter. Thank you very much. Court will take the matter under advisory for disposition.